
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DAWN ROCHELLE WARNER** | § | Case No. 12-40683 |
| xxx-xx-6265 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| D. A. DUARTE | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 12-4096 |
| | § | |
| DAWN ROCHELLE WARNER | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

This matter came before the Court for trial of the Complaint of the Plaintiff, D. A. Duarte (the "Plaintiff"), through which she seeks a determination that a debt purportedly owed to the Plaintiff by the Debtor-Defendant, Dawn Rochelle Warner ("Defendant" or "Debtor"), should be declared nondischargeable under §523(a)(2)(A) or (a)(6).[2]  After the trial, the Court took the matter under advisement.  This decision disposes of all issues pending before the Court.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

[2] At trial, the Plaintiff abandoned the asserted causes of action to deny the entry of a Chapter 7 discharge in favor of the Debtor-Defendant pursuant to 11 U.S.C. §727(a)(2) or §727(a)(4)(A).

# **FINDINGS OF FACT**

1. On or about February 12, 2008, the Plaintiff, D. A. Duarte, became interested in participating in the Miss Latina World beauty pageant which was organized and operated by the Debtor-Defendant, Dawn Rochelle Warner d/b/a Dawn Rochelle Productions.

2. In her promotion of the beauty pageant, the Defendant provided written materials, internet materials and made several promises about the possible benefits of participating in the pageant.

3. The Defendant represented that the participants and winner would receive various prizes, including merchandise and publicity opportunities.

4. The Defendant represented that the winner of the 2008 Miss Latina World competition would receive a prize package which the Defendant valued in her publicity at more than $25,000 which included a scholarship, scheduled photography and modeling bookings, jewelry, and a $2,500 shopping spree.

5. The Defendant also promised additional benefits to all participants in the beauty pageant including beauty and fashion seminars, sponsor gifts, accommodations and meals in San Antonio, and a professional photography package.

6. With regard to the Miss Photogenic award, participants in the pageant were asked to solicit sponsors for the contestant. Contestants would sell advertising in the pageant brochure and earn points which would be added to those earned in the competition.

7. In order to participate in the pageant, contestants were required to complete an entry form, pay a fee of $ 950.00 ($300 entry fee and $650 ad fee).

8. The Plaintiff complied with all terms and conditions of the pageant and completed the application, paid the appropriate fee, complied with all rules of the competition and sold advertising for the Defendant's pageant brochure.

9. The Plaintiff was successful in selling the most online advertising among 2008 pageant participants.

10. The Defendant failed to tender many of the benefits promised to the pageant participants, including media, photographic and modeling opportunities.

11. At the conclusion of the pageant on September 1, 2008, the Plaintiff was crowned Miss Latina World 2008.

12. In connection with her reign as Miss Latina World 2008, the Plaintiff was asked to perform certain functions during her one-year reign.

13. Upon the inception of her reign as Miss Latina World 2008, the Defendant failed to tender to the Plaintiff the immediate benefits which had been promised to the pageant winner.

14. For a number of weeks after the pageant, the Defendant refused to communicate with the Plaintiff regarding the agenda of, and the benefits owing to, the Plaintiff as the announced winner of the pageant.

15. Upon the Plaintiff's persistent inquiries in the post-pageant period regarding the scholarship money that she needed to further her education, the Defendant finally informed the Plaintiff that she would receive her cash scholarship award only at the end of her reign in 2009.

16. The Plaintiff completed all terms and conditions pertaining to her reign as Miss Latina World 2008, honoring all pageant obligations imposed upon her.

17. The Defendant's contention that the Plaintiff had been stripped of her title during the autumn of 2008 is not credible, given that the Plaintiff continued to represent the pageant in late 2008 and 2009, participated as the reigning titleholder in the 2009 Miss Latina World pageant and actually crowned her successor during that 2009 pageant.

18. The Defendant failed to deliver to the Plaintiff most of the prizes and the publicity opportunities that had been promised to her as the winner of the 2008 pageant.

19. The Defendant failed to deliver the $25,000 scholarship award to the Plaintiff at the end of her year-long reign as Miss Latina World 2008.

20. Upon the failure and/or refusal of the Defendant to tender the promised monetary awards to the Plaintiff, the Plaintiff filed a state court petition against the Defendant, which was ultimately assigned to the 285th Judicial District Court, in and for Bexar County, Texas, in Cause No. 2010-CI-17694 (the "State Court Litigation"). The petition sought damages for breach of contract, fraud and for violations of the Texas Deceptive Trade Practices Act.

21. A mediated settlement led to the entry of an agreed judgment in the amount of $25,000, plus post-judgment interest at the rate of 6% per annum, in favor of the Plaintiff and against the Defendant in the State Court Litigation on August 16, 2011 (the "State Court Judgment").

22. The Plaintiff is the current owner and holder of the State Court Judgment.

23. In light of the entry of an agreed judgment, no specific factual findings were made in the State Court Litigation.

24. The Debtor-Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on March 19, 2012.

25. The claim of the Plaintiff was properly scheduled as an unsecured claim in the amount of $25,000 in the Defendant's bankruptcy case.[3]

26. The indebtedness is still due and owing by the Defendant to the Plaintiff.

27. The Plaintiff timely filed her Complaint Objecting to the Discharge of a Debt on June 11, 2012, seeking the determination that the debt owed to her is nondischargeable as a debt obtained by false pretenses, a false representation or actual fraud under 11 U.S.C. §523(a)(2)(A), or as a debt for a willful and malicious injury under 11 U.S.C. §523(a)(6).

28. At the time that the representations were made by the Defendant to the Plaintiff regarding the scholarship and other prizes that would be awarded to the winner of the 2008 pageant, the Defendant knew that she did not possess the financial resources to fulfill those promises.[4]

29. At the time that the representations were made by the Defendant to the Plaintiff regarding the scholarship and other prizes that would be awarded to the winner of the 2008 pageant, the Defendant knew that any possibility that she could raise the capital needed in the required time period to tender the prizes and scholarship funds as represented was extremely remote and speculative.

---

[3] Schedule F filed by the Debtor on March 19, 2012 [dkt #1] in case no. 12-40683.

[4] See Ex. 3 --- clearly evidencing that, before and after the 2008 pageant, the Defendant repeatedly had a nominal or, in many months, negative balance in her bank accounts and that the only significant infusion of income realized by the Defendant in that period to offset those deficiencies arose from the transmittal of entry fees through Paypal.

30. At the time that the representations were made by the Defendant to the Plaintiff regarding the scholarship and other prizes that would be awarded to the winner of the 2008 pageant, the Defendant knew that her dire financial status precluded any feasible means of performing the promises that she had made to the Plaintiff.

31. Thus, at the time that the representations were made by the Defendant to the Plaintiff regarding the scholarship and other prizes that would be awarded to the winner of the 2008 pageant, the Defendant knew that her representations to the Plaintiff regarding the availability of the promised prizes were false.

32. The Defendant made the foregoing false representations to the Plaintiff with the intention of inducing her by deceit to enter the pageant, thereby tendering to the Defendant the prescribed entry fees and other required financial contributions.

33. In the absence of the false representations by the Defendant regarding the advertised benefits of pageant participation, including a sizeable award for the winner of the pageant, the Plaintiff would not have entered the pageant nor tendered any money to the Defendant.

34. The Plaintiff actually and justifiably relied upon the false representations of the Defendant.

35. As the 2008 pageant winner who was ultimately denied her promised prizes, the Plaintiff suffered financial losses as a direct and proximate cause of that reliance, which was capped by the agreement of the parties at the designated amount of $25,000.00, as reflected in the State Court Judgment.[5]

36. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

---

[5] The parties are bound by the liquidated amount of the debt as established by the award of damages expressed in the State Court Judgment. "A consent or agreed judgment is contractual in nature and in effect is a written agreement between the parties as well as an adjudication. It is as conclusive as any other judgment as to the matters adjudicated." *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (1956), cited in *Avila v St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 854 (Tex. App. – San Antonio 1997, pet. denied).

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 11 U.S.C. §523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. The complaint filed by the Plaintiff seeks a determination that the debt which he alleges is owed to her by the Defendant should be excepted from discharge under 11 U.S.C. §523(a)(2)(A) and/or §523(a)(6).[6]

4. In seeking to except the debt owing to her from the scope of the discharge granted to the Defendant, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

5. All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[7] *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

6. However, the Fifth Circuit has noted that there are limits to the maxim that exceptions to dischargeability are to be construed narrowly in favor of the debtor, particularly in situations falling under an exception to dischargeability in a case in which a debtor has committed fraud. *See generally Deodati v. M.M. Winkler & Associates (In the Matter of: M.M. Winkler & Associates),* 239 F.3d 746, 751 (5th Cir. 2001).

---

[6] See supra note 2.

[7] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

*Nondischargeability Under 523(a)(2)(A): Debt Arising by Fraud, False Pretenses, or False Representation.*

7. The Plaintiff's Complaint seeks a determination that the debt owed to her should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.

8. 11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:
   a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

9. Section 523(a)(2)(A) encompasses similar but distinct causes of action. Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[8] the Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

10. The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise ... related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].[9]

---

[8] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987). Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351(1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi),* 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

[9] While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express

11. Because any representation by the Defendant regarding her future fulfillment of the obligations due and owing to pageant participants, or the Plaintiff's expectations arising therefrom, pertained to a future event, any such statement cannot be properly characterized as a false representation or a false pretense in this Circuit.

12. Thus, the validity of the Plaintiff's claim under §523(a)(2)(A) in this case rests upon sufficient proof that the debt was obtained by actual fraud.

13. To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that:

    (1) the debtor made representations;
    (2) at the time they were made the debtor knew they were false;
    (3) the debtor made the representations with the intention and purpose to deceive the creditor;
    (4) the creditor justifiably relied on such representation; and
    (5) the creditor sustained losses as a proximate result of the representations.

    *Pentecost*, 44 F.3d at 1293, *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

14. The degree of reliance required under §523(a)(2)(A) is justifiable reliance. *Field v. Mans*, 516 U.S. 59, 70-71 (1995). Justifiable reliance does not require a plaintiff to demonstrate reasonableness nor does it impose a duty to investigate unless the falsity is readily apparent. "Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard." *Guion v Sims (In re Sims)*, 479 B.R. 415, 425 (Bankr. S.D. Tex. 2012) (*citing Field v. Mans*, 516 U.S. at 71).

---

statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See Walker v. Davis (In re Davis),* 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003). In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party." *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

15. Thus, the debt owed by the Defendant to the Plaintiff pursuant to the State Court Judgment, including all post-judgment interest, is therefore excepted from discharge as a debt obtained by actual fraud pursuant to 11 U.S.C. §523(a)(2(A).[10]

16. Court costs of $293.00 are awarded to the Plaintiff to be paid by the Defendant.

17. All other relief requested in the Plaintiff's Complaint in the above-referenced adversary proceeding shall be denied.

18. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

19. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 07/03/2014

*Bill Parker*

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[10] Accordingly, the Court need not reach the issues and arguments presented with respect to the alleged nondischargeability of this debt under other subsections.